SUPERIOR COURT
OF THE
STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: February 19, 2025
Date Decided: March 24, 2025

Jesse L. Noa, Esquire
Hannah L. Paxton, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801

Elizabeth A. Powers, Esquire
Justin C. Barrett, Esquire
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801

Alec Covington, Esquire
MCGUIREWOODS LLP
201 North Tryon Street
Charlotte, North Carolina 28202

RE:  *Mosaic Capital Partners v. Local Bounti Operating Company*
C.A. No. N23C-08-292 PRW CCLD
Plaintiff's Motion for Judgment on the Pleadings

Dear Counsel:

The Court provides this Letter Opinion in lieu of a more formal written decision resolving Mosaic Capital Partners' Motion for Judgment on the Pleadings (D.I. 24). For the reasons explained below, that motion is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Mosaic initiated this suit in September 2023, alleging that Local Bounti's

---

[1]  Mindful that the parties have a complete understanding of and familiarity with the factual background and operative agreement, the Court dispenses with a fuller recounting thereof here.

claims for indemnification under the Purchase Agreement were untimely and improper.[2]  Now, Mosaic moves for judgment on the pleadings on its sole count which requests declaratory judgment.[3]  Through it, Mosaic seeks the Court's declaration that the Purchase Agreement bars Local Bounti's indemnification claims.[4]

The Purchase Agreement governs Local Bounti's purchase of Hollandia Produce Group, Inc.[5]  The deal closed on April 4, 2022, and the terms of the Purchase Agreement created two indemnity escrow funds: the "RWI Indemnity Escrow Funds" and the "Special Indemnity Escrow Funds."[6]  Both escrow funds had a schedule for gradual release of its funds, but release could be paused upon proper notice of:  (1) losses because of a breach of a representation or warranty; or (2) water right losses.[7]

Pursuant to that clause, Local Bounti emailed Mosaic two separate

---

[2]  Opening Br. for J. on the Pleadings at 1–2 (D.I. 24).

[3]  Am. Compl. ¶¶ 14–16; Opening Br. for J. on the Pleadings at 1.

[4]  Opening Br. for J. on the Pleadings at 1.

[5]  *Id.* at 2.

[6]  Opening Br. for J. on the Pleadings Ex. A (the "Purchase Agreement"), at §§ 2.06, 2.08 (D.I. 24).

[7]  Purchase Agreement § 2.08.

indemnification notices to pause the release of escrow funds on April 4, 2023.[8] The emails were received by Mosaic at 10:04 p.m. EST.[9] In response, Mosaic claimed that the Notices were untimely because they didn't comply with the notice provision in § 11.03 of the Purchase Agreement.[10] A year later, Local Bounti provided another indemnification notice on April 4, 2024, for additional "anticipated" losses.[11] Mosaic alleges that this indemnity request is invalid because the losses haven't fully accrued yet.[12]

### PARTIES' CONTENTIONS

In its motion, Mosaic asks the Court to declare that it has no indemnification obligation because Local Bounti's 2023 Notices were untimely and the 2024 Notice was not proper.[13] The parties disagree about the applicability of the § 11.03 notice provision and whether an indemnification notice can be issued for indefinite, anticipated losses.

---

[8]  Opening Br. for J. on the Pleadings Exs. B and C (collectively, the "2023 Notices") (D.I. 24).

[9]  *Id.* Ex. H (D.I. 24).

[10]  *Id.* Exs. D and E (collectively, "Replies to the 2023 Notices") (D.I. 24).

[11]  *Id.* Ex. G (the "2024 Notice") (D.I. 24).

[12]  Opening Br. for J. on the Pleadings at 12–13.

[13]  *Id.* at 1.

## A. The 2023 Notices

For the 2023 Notices, Mosaic relies upon the notice provision at the end of the Purchase Agreement in § 11.03 under "Article XI MISCELLANEOUS," which states:

> Notices. *All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given*: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) *on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient*; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 11.03):[14]

Since the email was sent at 10:04 p.m., Mosaic claims it was sent after normal business hours and was delivered on April 5, instead of April 4.[15]  If the Court were to accept this interpretation, it would mean that the Notice was untimely because April 4 was the deadline.[16]

But Local Bounti counters that the Notices are timely because § 8.01(a)

---

[14]   Purchase Agreement § 11.03 (emphasis added).

[15]   Opening Br. for J. on the Pleadings at 11–13.

[16]   *Id.*

("Survival of Representations, Warranties, and Covenants") of the Purchase Agreement, not § 11.03, applies for indemnification notices.[17]  Section 8.01(a) states:

> Except as set forth below in this Section 8.01, the representations and warranties of the Sellers, the Target, Parent and Purchaser contained in this Agreement or in any certificates or documents delivered *hereunder shall survive for a period of time ending at 11:59 p.m. Eastern Time, on that date which is twelve (12) months after the Closing Date*.[18]

In Local Bounti's view, this is a superseding deadline that requires notice to be sent before 11:59 p.m. EST because the at-issue indemnification notices were for breaches of specific representations and warranties and water rights losses.[19]  It also points out that there is no "time is of the essence" provision to bar any late indemnification claims.[20]

In response, Mosaic insists that § 8.01 does not dictate notice procedures and Local Bounti was still required to abide by § 11.03's notice requirements, especially as the provisions are not in conflict with each other.[21]  It also says that the Notice was undisputedly sent "after normal business hours" because the term is

---

[17]   Answering Br. for J. on the Pleadings at 16–20 (D.I. 31).

[18]   Purchase Agreement § 8.01(a) (emphasis added).

[19]   *See generally* 2023 Notices.

[20]   Answering Br. for J. on the Pleadings at 23–25.

[21]   Reply Br. for J. on the Pleadings at 4–6 (D.I. 33).

unambiguous and has a commonly understood plain meaning of 9 a.m. to 5 p.m.[22]

## B. The 2024 Notice

Mosaic alleges that the claim noticed in the 2024 Notice does not qualify for coverage because it represents "inherently speculative" damages.[23] That claim is based on § 8.02(e) which states:

> From and after the Closing, each Seller Indemnifying Party shall, severally (but not jointly) up to its Equity Percentage, indemnify, defend and hold harmless the Purchaser Indemnified Parties for, from and against all Water Rights Losses (as defined below) that any Purchaser Indemnified Party *may* suffer, sustain or incur.[24]

Mosaic argues that the term "may" does not cover anticipated loss because a loss must actually occur to trigger an indemnification obligation.[25] It then goes on to argue that the claim is too speculative to permit any finding of indemnity and that the damages are uncertain.[26]

Local Bounti disagrees because "may" would include losses that "will occur in the future."[27] Local Bounti also states that there is nothing speculative about its

---

[22] *Id.* at 8–11.

[23] Opening Br. for J. on the Pleadings at 13.

[24] Purchase Agreement § 8.02(e) (emphasis added).

[25] Opening Br. for J. on the Pleadings at 12–13.

[26] Reply Br. for J. on the Pleadings at 14–16.

[27] *See* Purchase Agreement at Schedule 8.02(e); Mot. for J. on the Pleadings Hr'g Tr. at 32 (D.I. 41)

> And it's important to look to the definition in Schedule 8.02(e) of water

water rights loss.[28]  It says that it is "undisputed" that loss will occur over the upcoming years because it has already begun to incur losses.[29] Only the exact amount in dispute is uncertain because it is contingent upon the then-present value of water.[30]

## APPLICABLE LEGAL STANDARD

Any party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[31] But the Court can't grant judgment on the pleadings unless, after drawing all reasonable inferences in favor of the non-moving party, "no material factual dispute exists and the movant is entitled to judgment as a matter of law."[32] In resolving a Rule 12(c) motion, the Court accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-movant.[33]

---

rights losses. And it has included losses that may be, quote, weather-related to groundwater extractions that occurred in the past or will occur in the future. It's more than reasonable to interpret that that means that, if we know there's an issue here and we're already needing to have groundwater extractions from here or buy water from somewhere else and we know we're going to need to keep doing that, that's covered under water rights losses.

[28]  Answering Br. for J. on the Pleadings at 27–29.

[29]  *Id.*

[30]  *Id.*

[31]  Del. Super. Ct. Civ. R. 12(c).

[32]  *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[33]  *Id.*

When dealing with a contractual dispute, "judgment on the pleadings . . . is a proper framework for enforcing unambiguous contracts because there is no need to resolve material disputes of fact."[34]  The Court must "decide whether the contract at issue is in any way ambiguous, by determining whether the 'provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'"[35]  "In determining whether a contract has only one reasonable interpretation, the court must read the agreement 'in full and situated in the commercial context between the parties.'"[36]  At bottom, the Court can grant judgment on the pleadings in favor of the moving party only if the contract is unambiguous.[37]

## ANALYSIS

**A. Declaratory judgment isn't appropriate because the Court can't find, as Mosaic suggests it should, that the Purchase Agreement has only one reasonable interpretation.**

For Mosaic to prevail, its interpretation of the Purchase Agreement must be

---

[34]  *Lillis v. AT & T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006) (citing *DeLucca v. KKAT Mgmt.*, L.L.C., 2006 WL 224058, at *22 (Del. Ch. Jan. 23, 2006)).

[35]  *Id.* at 330 (quoting *Rhone–Poulenc Basic Chemicals v. American Motorists Ins.*, 616 A.2d 1192, 1196 (1992)).

[36]  *In re Nat'l Collegiate Student Loan Trusts Litig.*, 251 A.3d 116, 144 (Del. Ch. 2020) (quoting *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 926–27 (Del. 2017)).

[37]  *Lillis*, 904 A.2d 325 at 330.

the only reasonable one because the agreement is unambiguous.[38]  Not so here.  Both parties present reasonable interpretations—Mosaic even admits that "there's not a clear winner. . . ."[39]

The parties' interpretations differ based on which provision is viewed as the more specific, controlling one; the parties dispute whether § 8.01(a) or § 11.03 is *the* specific provision.[40]  This is significant because, in the norm, "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."[41]

Local Bounti insists that § 8.01(a) is the specific provision and controls the notice provided.[42]  There is some support for Local Bounti's position in the Purchase Agreement's waiver provision.  It provides that Mosaic is not relieved of its duties simply because Local Bounti may have been delayed in exercising its rights.[43]  This

---

[38]  *See In re Nat'l Collegiate Student Loan Trusts*, 251 A.3d 116 at 144; *see also Lillis*, 904 A.2d at 329–30.

[39]  Mot. for J. on the Pleadings Hr'g Tr. at 11.

[40]  Opening Br. for J. on the Pleadings at 11–13; Answering Br. for J. on the Pleadings at 16–17.

[41]  *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).

[42]  Opening Br. for J. on the Pleadings at 11–13.

[43]  *See, e.g.*, *Blue Cube Spinco LLC v. Dow Chem. Co.*, 2021 WL 4453460, at *11 (Del. Super. Ct. Sept. 29, 2021) ("Under the No Waiver Provision, the parties agreed any 'delay' by the Company in exercising its 'right' to indemnification would not 'operate as a waiver' of its 'right'

suggests that § 11.03 is a procedural notice provision that should not be read to limit the substantive right to indemnification. Again, in the norm, the Court shouldn't read any agreement in a way that permits a procedural provision to limit a substantive right, unless such the intention to do so is explicitly stated in the agreement.[44] And there is nothing specifically stated in the Purchase Agreement to support limiting the indemnification right because Mosaic's claim relies on a "miscellaneous" provision that does not clearly state it applies to indemnity notices.[45]

On the other hand, in Mosaic's view, § 11.03 is the more specific and controlling provision under which Local Bounti's 2023 indemnification claims would be deemed untimely. Mosaic treats the notice provision, one that seemingly dictates the method for all notices within the Purchase Agreement, as a condition precedent to indemnity coverage.[46] Mosaic's interpretation would reduce—if not eliminate—the provisions effective timeframe by 7 hours, which directly contradicts

---

to indemnification should Dow, as it in fact did, later decide a notice is deficient.").

[44] *See Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *25 (Del. Super. Ct. July 29, 2021).

[45] *See generally* Purchase Agreement.

[46] Mot. for J. on the Pleadings Hr'g Tr. at 34–35.

the language of the Purchase Agreement that ends the survival period at 11:59 p.m.[47]

Maybe evidence supporting this interpretation will be revealed during discovery, but it's hardly clear on a reading of the complete agreement in context.[48]  Indeed, a cursory shortening of the survival period on Mosaic's say-so and a "miscellaneous" notice provision would make little sense; it renders the survival period's expiration time illusory.[49]  Even Mosaic admits that post-5 p.m., following the "miscellaneous" notice provision, there would be practically no way for the indemnity notice to be delivered prior to the survival period's lapse.[50]  Without compelling evidence of a contrary intent, the Court's hesitant to endorse an interpretation that would "cause a total forfeiture of a sophisticated indemnification scheme . . . ."[51]

There are also material factual disputes about the Purchase Agreement.  The "miscellaneous" notice provision relies upon the "normal business hours of the

---

[47]  *See* Purchase Agreement § 8.01(a) (emphasis added).

[48]  *See Aveanna* Healthcare, 2021 WL 3235739, at *25 (acknowledging that a condition precedent, such as a notice provision, may limit a substantive right to indemnity if that intent is "expressed clearly and unambiguously").

[49]  *See Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)) ("Contracts will be interpreted to 'give each provision and term effect' and not render any terms 'meaningless or illusory.'").

[50]  Mot. for J. on the Pleadings Hr'g Tr. at 5–8, 35–38.

[51]  *See, e.g.*, *Blue Cube Spinco*, 2021 WL 4453460, at *11.

recipient."[52] But there are no facts in the record to even hint at Mosaic's normal business hours. Mosaic's counsel claims that the Court should use the term's plain meaning and interpret it to mean 9 a.m. to 5 p.m.; it goes as far as to say that, even with discovery, the Court will never be able to determine Mosaic's normal business hours.[53] Not necessarily.

The contract's language eschews the use of any plain or ordinary meaning to the general public by using the qualifier "of the recipient."[54] It would seem that such information can certainly be deduced; discovery may well reveal Mosaic's normal business hours. Accordingly, such discovery is appropriate. Motion for judgment on the pleadings is not. Mosaic conceded as much at the hearing on its motion.[55]

Mosaic's motion fails here because it hasn't provided *the* single reasonable

---

[52] Purchase Agreement § 11.03.

[53] Mot. for J. on the Pleadings Hr'g Tr. at 39

> And then one final point on the normal business hours discussion. Opposing counsel said that there's a fact missing in the allegations. We don'' have normal business hours. But that fact will always be missing. There's not anything -- we don't have, you know, like you mentioned earlier, something on the door that says "normal business hours." So we're never going to know how to define that any more clearly than we know it right now sitting here today. That's why we think it's appropriate for 12(c), Your Honor.

[54] *Cf. Terrell v. Kiromic Biopharma, Inc.*, 2024, 2025 WL 249073, at *3 (Del. Jan. 21, 2025) (citing *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013)) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions unless it appears the parties intended a special meaning.").

[55] Mot. for J. on the Pleadings Hr'g Tr. at 13 ("And I'm not saying that they don't have an argument to make here. I just think ours is a stronger argument.").

interpretation of the Purchase Agreement.[56]

## B. The 2024 noticed claim may be indemnifiable and eventually indemnified.

Mosaic's 2024 indemnity claim may be resolved by this Court. No doubt, before a Court can resolve an indemnification claim, the claimed loss must be certain.[57] In some circumstances, this means the Court won't entertain an indemnity claim when an actual suit hasn't been filed and the prospect of such is just too remote.[58] In turn, the Court has refused to review a dispute when there is only the threat of litigation with speculative damages.[59] But that's not the case here.

The claim referenced in the 2024 Indemnity Notice has been actively litigated on an indemnifiable issue, with concrete losses already accruing.[60] While the Notice includes anticipated losses, it also lists actual losses.[61] Based on the record, this litigation "appears to be unavoidable" and the "material facts [sufficiently] static."[62] The Court does not see that "future events may obviate the need for judicial

---

[56] *See In re Nat'l Collegiate Student Loan Trusts*, 251 A.3d at 144.

[57] *See XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1218 (Del. 2014).

[58] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *8 (Del. Super. Ct. Aug. 31, 2021).

[59] *See id.* at *8–10.

[60] 2024 Notice.

[61] *Id.*

[62] *See XL Specialty*, 93 A.3d at 1217.

intervention" because indemnifiable losses have already begun to accrue—a point the parties so not dispute.[63]   Thus, the Court finds that this indemnification request, along with its request to indemnify its anticipated losses, is valid.

It is important to note that the use of the "or in the future" language within the Purchase Agreement does not provide blanket coverage of all possible anticipated losses.  Rather, such language should be read to include indemnification for any known and anticipated losses arising from claims that are already in litigation.  It doesn't cover any unknown claims or totally speculative losses.  In other words, it is not a placeholder in case a claim later arises.[64]

### CONCLUSION

Mosaic's Motion for Judgment on the Pleadings is **DENIED**.  The 2023 and 2024 Notices appear sufficient to pause the release of all potentially affected escrow funds.  And at this point, the Court cannot say Local Bounti has no right to indemnification for losses already incurred, accruing, and noticed.

**IT IS SO ORDERED**.

Paul R. Wallace, Judge

Original to Prothonotary

---

[63]   *See id.* at 1217-18*; see also* 2024 Notice; *see also* Reply Br. for J. on the Pleadings at 15.

[64]   *Cf. Lima*, 2021 WL 5774394, at *8.